**WILLIAM A. STRAUB, INC., et al.,**
Appellants,

v.

**CITY OF ST. LOUIS et al.,**
Respondents.

No. 57713.

Supreme Court of Missouri,
Division No. 2.

March 11, 1974.

Jesse E. Bishop, St. Louis, for appellants.

Edwin Grossman, St. Louis, co-counsel for appellant William A. Straub, Inc.

Robert C. McNicholas, City Counselor, James J. Wilson, Associate City Counselor, St. Louis, for respondents City of St. Louis and Raymond Bartunek, Successor in Office to Joseph C. Sansone of the City of St. Louis.

Francis P. Dorsey, St. Louis, for respondent John K. Travers, Collector of Revenue of the City of St. Louis.

FINCH, Acting Presiding Judge.

This appeal involves the assessability and taxability by the City of St. Louis of certain tangible personal property owned by American National Bank in St. Louis (hereinafter Bank) and leased by it to the other appellants for use in their respective businesses. Interpretation of revenue laws of the State of Missouri (§§ 137.495 and 148.110) [1] is involved, which vests jurisdiction of this appeal in this court. Mo. Const. Art. V, § 3, V.A.M.S. We reverse and remand with directions.

The Bank, in addition to its regular banking activities, was engaged in the business of leasing personal property. It executed written leases with the other appellants whereby it leased personal property for use in their respective businesses. The Straub lease covered certain cash registers and refrigeration equipment, the Tobey lease a computer, and the Herring lease various drug store fixtures, show cases and refrigeration equipment. The leases were for eight year terms at rentals comparable to those of other companies in the leasing business. There were no options in lessees to purchase, although testimony indicated that normally the lessee might purchase the property for its fair market value at the expiration of the lease. The printed lease forms specified that all taxes on leased property should be paid by the lessees, but the Straub lease contained an inserted typewritten provision excepting personal property taxes from that obligation.

In 1970 the City Assessor, acting pursuant to § 137.495,[2] assessed the leased items of personal property to the respective lessees in possession thereof.[3] He followed this course because the state statutes did not permit the City to assess that property for personal property tax purposes to the Bank as owner. Taxation of banks (state and federal) was covered by §§ 148.010 through 148.110. Section 148.030 established a tax of seven per cent of net income of banks, less certain enumerated credits for other taxes paid, and § 148.110 [4] made such tax a substitute for various other taxes, including all taxes on all tangible personal property. The City received the proceeds of this tax, less two per cent for collection thereof. § 148.080.

These 1970 assessments against the three lessee appellants were appealed to the Board of Equalization of the City of St. Louis, which affirmed the action of the Assessor. The three taxpayers then filed petitions for review with the State Tax Commission, which, after conducting a hearing, held the assessments to be invalid, saying "we regard Section 148.110 as explicit and exclusive and absolutely declarative of the intentions of the General Assembly." The City then filed its petition for review with the Circuit Court,[5] which

---

1. All statutory references are to RSMo 1969, V.A.M.S., unless otherwise indicated.

2. § 137.495. "Every person, corporation, partnership or association, subject to taxation under the laws of this state and owning or controlling tangible personal property taxable by the cities shall file with the assessor of the cities a return listing all such tangible personal property so owned or controlled on January first of each year and estimating the true value thereof in money. The return shall be filed between the first day of January and the first day of April of each year, shall be signed by the taxpayer, and shall be certified by the taxpayer as being a true and complete list and statement of all the tangible personal property and the estimated value thereof."

3. In 1969 leased personal property had been assessed to Straub but not to the other two lessee appellants.

4. § 148.110. "It is the purpose and intent of the general assembly to substitute the tax provided by sections 148.010 to 148.110 for the tax on bank shares which was imposed by section 10959, RSMo 1939, and for all taxes on all tangible and intangible personal property of all banking institutions subject to the provisions of sections 148.010 to 148.110, and for all property taxes on the shares of such banking institutions."

5. The three cases involving 1970 assessments against Straub, Tobey and Herring were consolidated in the Circuit Court with another pending case involving the 1969 assessment of

reversed the Tax Commission, holding that §§ 137.495 and 137.075 authorized assessment of tangible personal property to one in possession thereof, and that appellants, as lessees and possessors of the property in question, were properly assessed under said statutory provisions. The court held that what it described as an exemption to the Bank under § 148.110 was not available to customers leasing property from the Bank. In addition, the court expressed the opinion that the lease agreements were in effect financing and security agreements. This appeal followed.

Section 137.495, which is set out in full in footnote 2, is applicable to the City of St. Louis. It provides that tangible personal property is assessable to those "owning or controlling" it. This is consistent with the provisions of § 137.075, the general statutory provision relative to assessment of property, wherein it is provided that "every person owning or holding" such property on the first day of January shall be liable for taxes thereon.

This court in State ex rel. Rudder v. Haphe, 326 Mo. 460, 31 S.W.2d 788 (1930), considered the predecessor section to § 137.075 and concluded that under its provisions property could be assessed to the one holding as well as to the one owning property. In the course of its opinion, the court said, 31 S.W.2d l.c. 790:

"From the foregoing it appears that every person owning or holding property on the 1st day of June is liable for the taxes thereon for the ensuing year, that it is the duty of every person to list with the assessor all taxable property owned by him, or under his care, charge, or management, and that personal taxes constitute a debt against the person assessed with such taxes, the person named in the tax bill. If the person who holds or has under his care, charge, and management personal property is liable for the taxes thereon,

such taxes may be assessed against him or in his name; and, when so assessed, they constitute a personal debt for which a personal judgment against him may be recovered."

Subsequently, l.c. 791, the court stated further:

" * * * Both the person 'owning' and the person 'holding' personal property are liable for taxes thereon, and such taxes may be assessed against either or both."

Such reasoning is equally applicable to the provisions of § 137.495, which was enacted subsequent to the Haphe decision.

■ At the outset, it should be recognized that this case does not involve an attempt by the City to tax a leasehold interest in the personal property in question. Appellants argue that it does, but we reject that contention. This is an ad valorem tax on the personal property itself. The City simply availed itself of the option established by § 137.495 to assess the property to the holders thereof.

The key issue in this case is whether appellant lessees must pay the taxes levied as a result of such assessments in view of the fact that the Bank has paid the tax provided for by § 148.030. This involves interpretation of § 148.110. The City argues and the trial court held that it provides an exemption from tangible personal property to banks, that such exemption is not transferrable, and that others, such as appellant lessees, may not take advantage of such exemption. Consequently, says the City, § 148.110 does not relieve appellant lessees of the tax assessed against them as holders pursuant to § 137.495. The fallacy in this argument is that the statute does not speak in terms of exemption from taxation. An exemption exists in situations wherein some person, corporation or institution is excused from some obligation. For exam-

---

the property leased to Straub. That suit, seeking a construction of § 137.495 regarding the attempted assessment of leased property, had been commenced in the Circuit Court because the assessment had been made too late

to pursue the statutory appeal to the Tax Commission. Straub paid the tax under protest after filing suit and amended his petition to ask for refund thereof.

ple, real property used for religious purposes is exempted from real estate taxes. In contrast, § 148.110 states an intention on the part of the General Assembly to *substitute* a different tax, namely, the seven per cent tax on income, for other specified taxes, including the one on tangible personal property. The seven per cent income tax is expressly stated to be a substitution for the personal property tax. One is in lieu of the other. An exemption from tax is not involved.

■ While § 137.495 authorizes assessment of personal property to the owner, the holder, or both, the tax may be collected only once, and when paid by either the owner or the holder, the obligation is extinguished. Otherwise, double taxation could result. If it had been permissible under § 137.495 to assess the property in question to both the Bank and lessees, and if the Bank had then paid its tax, clearly the City could not have collected a second time from lessees. The question we must decide is whether by paying the substituted seven per cent income tax, which concededly has been paid for 1969 and 1970, the Bank in effect paid the tax on its personal property, thereby satisfying the obligation and eliminating any right of the City to collect again by collecting a tangible property tax from lessees.

■ We conclude that the General Assembly has expressed in § 148.110 an intention that payment of the seven per cent income tax by a bank is to be substituted for payment of the tangible property tax and is equivalent thereto. As appellants expressed it in oral argument, when the Bank paid its tax pursuant to § 148.030, it paid every dime of tax it owed on any personal property which it owned. This being true, we are forced to conclude that payment of said seven per cent income tax extinguished the Bank's obligation with reference to personal property taxes, and that insofar as any additional assessment thereon to lessees as holders is concerned, the situation is the same as if the property had also been assessed to the Bank and it had paid that tax.

■ It very well may be that when the General Assembly enacted § 148.110 it did not contemplate that banks would be engaged in the equipment rental business or that they would own personal property which they held for lease or rental to others in addition to property for use in their own banking operations. However, whether it did or didn't, the fact remains that the section as written was applicable to all personal property owned by banks. In 1972, the General Assembly amended § 148.110 (and other sections of Chapter 148 as necessary) to provide specifically that the tax paid by banks under § 148.030 is not a substitute for a tangible property tax on property held for lease or rental to others.[6] The fact that such amendment was considered necessary further confirms the conclusion that prior thereto the tax under § 148.030 was a substituted tax for all personal property owned by the Bank.

■ Although the trial court relied in part on its conclusion that the leases in question were simply financing and security agreements, we conclude that under the evidence we should do as the Tax Commission did and treat them as what they purported to be, namely, straight leases of personal property with title remaining in lessor Bank. All parties so treated and considered them. The Bank reported payments thereunder as rentals (rather than capital payments) on the return which it filed pursuant to § 148.030 to determine its seven per cent tax on net income. At least some of the leases provided for renewal

6. § 148.110 (Laws 1972, p. 740). "It is the purpose and intent of the general assembly to substitute the tax provided by sections 148.-010 to 148.110 for the tax on bank shares which was imposed by section 10959, RSMo 1939, and for all taxes on all tangible and intangible personal property of all banking institutions subject to the provisions of sections 148.010 to 148.110, except taxes on tangible personal property owned by the taxpayer and held for lease or rental to others and for all property taxes on the shares of such banking institutions."

options and there were no options to purchase and no provisions for passage of title upon payment of all rentals under the lease. Therefore, we treat the Bank as owner of the items of rental property and consider appellant lessees to be mere possessors pursuant to the various leases.

Accordingly, we hold that the City does not have the right to collect from appellant lessees on property of the Bank on which it paid the tax under § 148.030 for the years 1969 and 1970. The judgment of the Circuit Court is reversed and the cause remanded with directions to reinstate the findings and decision of the State Tax Commission regarding the 1970 assessments and to enter judgment for appellant Straub against the Collector of Revenue of the City of St. Louis for refund of $1,015.-50 paid under protest on the 1969 assessment against it on its leased property, as prayed in its supplemental petition in Cause No. 12207F.

SEILER and HOLMAN, JJ., concur.

HENLEY, P. J., and MORGAN, J., not sitting.